JOHN D. HIGGINBOTHAM, Bar No. 204179
BEST BEST & KRIEGER LLP
3750 University Avenue, Suite 400
P.O. Box 1028
Riverside, CA 92502
Telephone: (951) 686-1450
Facsimile: (951) 686-3083
john.higginbotham@bbklaw.com

Attorneys for Petitioner
CITY OF COLTON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF COLTON, <br><br> Petitioner, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, *et al.*, <br><br> Respondents. <br><br> GAYLOR W. SINGLETARY, <br><br> Real Party in Interest. | Case No. EDCV 11-0241 CAS (DTBx) <br><br> REPLY TO F.B.I.'S OPPOSITION TO PETITION TO COMPEL; <br><br> DECLARATION OF JOHN D. HIGGINBOTHAM <br><br> Date:  April 25, 2011 <br> Time:  10:00 a.m. <br> Judge:  Hon. Christina A. Snyder |

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION AND JURISDICTION OVER THE F.B.I.

The District Court clearly *does* have jurisdiction to order the F.B.I. or any other federal agency to comply with a subpoena, regardless of where the underlying subpoena was initially issued.

28 U.S.C. section 1331 confers jurisdiction in any civil action arising under the laws of the United States. This present action arises out of a federal agency's refusal to comply with subpoenas based on its interpretation of federal statutes and regulations, including 5 U.S.C. section 552a and 28 C.F.R 16.21 *et. seq.*

28 U.S.C. section 1346(a)(2) confers jurisdiction in civil actions in which the United States is a defendant founded upon any act of Congress or any regulation of an executive department. Again, that is precisely the situation here.

The F.B.I. is not exempt from federal court oversight. Where, as here, the F.B.I. is refusing to comply – without so much as even hinting at any substantive justification or claim of privilege – with a subpoena for obviously relevant discovery, the District Court can and should right that wrong.

## II. THE *EXXON SHIPPING* CASE IS CONTROLLING, AND ALLOWS A DISTRICT COURT TO ORDER A FEDERAL AGENCY TO COMPLY WITH CIVIL DISCOVERY

The Ninth Circuit Court of Appeal has directly held that the federal courts have authority to compel a federal agency to comply with a subpoena.

In *Exxon Shipping Co., v. U.S. Dept. of Interior*, 34 F.3d 774 (9th Cir. 1994), the Ninth Circuit rejected arguments very similar to those asserted by the F.B.I. here. Indeed, it is apparent in reading the *Exxon Shipping* decision, that federal agencies, including and (perhaps most notably) the F.B.I., have been unsuccessfully

making these same stale arguments for decades, notwithstanding the 1958 amendments to 5 U.S.C. § 301 and the numerous subsequent cases rejecting the F.B.I.'s interpretation of *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 95 L. Ed. 417, 71 S. Ct. 416 (1951). Quoting from *Exxon Shipping*:

> At issue in *Touhy* was whether lower federal officials could be held in contempt for refusing to comply with a subpoena when agency regulations prohibited them from disclosing relevant documents. Here, unlike in *Touhy*, the agencies themselves are named defendants. Thus, the ultimate question of federal agencies' authority to withhold discovery, including deposition testimony, is squarely at issue.
>
> Section 301 does not, by its own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena. Section 301 reads:
>
> > The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. **This section does not authorize withholding information from the public or limiting the availability of records to the public.**
>
> 5 U.S.C. § 301 (1982) (emphasis added). The second sentence of § 301 was added by Congress in 1958. According to the legislative history, Congress was concerned that the statute had been "twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public and, even, from the Congress." 2 U.S. Code Cong. & Admin. News 3352 (1958); see *Chrysler Corp. v. Brown*, 441 U.S. 281, 310, 60 L. Ed. 2d 208, 99 S. Ct. 1705 (1978). The House Report accompanying the 1958 amendment explained that the proposed amendment would "correct" a situation that had arisen in which the executive branch was using the housekeeping statute as a substantive basis to withhold information from the public. H.R. No. 1461, 85th Cong., 2d Sess. (1958), reprinted in 1958 U.S.C.C.A.N. 3352, 3353.
>
> The Report noted that the original housekeeping statute, enacted in 1789, was enacted "to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents." *Id.* at 3352. The statute was apparently first used to deny information to the public in 1877, when a California newspaperman sought

politically sensitive files from the Hayes Administration. *Id.* Over the years, executive officers "gradually moved in" and the housekeeping statute became a "convenient blanket to hide anything Congress may have neglected or refused to include under specific secrecy laws." *Id.* at 3353. According to the House Report, the purpose of the 1958 amendment was to "correct that situation." *Id.*

In *Chrysler Corp. v. Brown*, 441 U.S. at 310, the Supreme Court acknowledged that § 301 did not provide "substantive rules" regulating disclosure of government information. The Court held that the statute is simply "a 'housekeeping statute,' authorizing what the APA terms 'rules of agency organization, procedure or practice' as opposed to 'substantive rules.'" *Id.* **The Court noted that nothing in § 301's legislative history indicated that Congress intended the statute to be a grant of authority to withhold information from the public.** *Id.* Subsequent judicial decisions interpreting § 301 have noted that the 1958 amendment explicitly sought to eliminate any perception that the section created an executive privilege. *Harvey Aluminum v. NLRB*, 335 F.2d 749, 755 (9th Cir. 1964); *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir. 1961).

The government also argues that § 301 authorizes it to instruct its employees not to testify in judicial proceedings because § 301 grants it authority to control "the conduct of its employees." However, we have already held that in interpreting § 301, **we will not distinguish between subpoenas seeking testimony and documentary evidence**. *In re Recalcitrant Witness Boeh*, 25 F.3d at 766 (holding that *Touhy* applies in cases involving a subpoena *ad testificandum*). **"There is no difference . . . between the power of an agency head to specify what records a subordinate may release and the power to specify what information a subordinate may release through testimony."** *Id.* Furthermore, the 1958 amendment's legislative history supports the argument that Congress intended the statute to cover government employees who are subpoenaed to testify. See H.R. Rep. No. 1461 at 2.

Thus, **neither the statute's text, its legislative history, nor Supreme Court case law supports the government's argument that § 301 authorizes agency heads to withhold documents or testimony from federal courts**.

*Exxon Shipping Co., v. U.S. Dept. of Interior*, supra at 777-778 [emphasis added, footnotes omitted].

While the *Exxon Shipping* case arose out of a discovery dispute in an underlying federal case, that is a distinction without any substantive difference.

The happenstance that the underlying case in which the discovery is needed is in state court rather than federal court is meaningless as a practical matter. Why should private parties to a federal lawsuit have any greater right to discovery than private parties to a state court lawsuit?

### III. THE F.B.I. IS NOT A LAW UNTO ITSELF

The F.B.I.'s interpretation of the law would effectively result in neither state nor federal courts having any authority to compel the F.B.I. to compel with a state court subpoena, even where, as here, the F.B.I.'s in-house counsel has expressly directed the private litigant to file a petition in federal court to compel the discovery. In essence, the F.B.I. would be a law unto itself, completely exempt from judicial oversight. Such a framework is entirely contrary to United States Supreme Court precedent. Quoting again from *Exxon Shipping*:

> As the Supreme Court has said, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds*, 345 U.S. 1, 9-10, 97 L. Ed. 727, 73 S. Ct. 528 (1953). We decline to hold that federal courts cannot compel federal officers to give factual testimony. Cf. *Northrop v. McDonnell Douglas Corp.*, 243 U.S. App. D.C. 19, 751 F.2d 395, 398 n.2 (D.C. Cir. 1984) (declining to "graft onto discovery law a broad doctrine of sovereign immunity").9
>
> Footnote 9: Moreover, Congress has waived the government's sovereign immunity with respect to civil actions such as this one, which seeks "relief other than money damages" and alleges that an agency or an officer within has failed to act lawfully. See 5 U.S.C. § 702.
>
> The government's argument would also violate the fundamental principle that "'the public . . . has a right to every man's evidence.'" *United States v. Bryan*, 339 U.S. 323, 331, 94 L. Ed. 884, 70 S. Ct. 724 (1950) (quoting Wigmore, Evidence § 2192 (3d ed.)). Exceptions "to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974). Furthermore, the Federal Rules of Civil Procedure strongly favor full discovery. "Parties may obtain discovery regarding any matter, not privileged, which is

relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1).

*Exxon Shipping Co., v. U.S. Dept. of Interior*, supra at 778.

## IV. THE CASES CITED BY THE F.B.I. ARE INAPPLICABLE

The F.B.I.'s reliance on the Fourth Circuit's decision in *Boron Oil Co. v. Downie*, 873 F.2d 76 (4th Cir. 1989) is misplaced. In *Boron*, the appellate court found no jurisdiction because it was a removal case, and the district court's jurisdiction derived from the jurisdiction of state court, which never had jurisdiction to compel the federal government to do anything:

> The district court exceeded its jurisdiction **upon removal, which it derived solely from that of the state court**, in compelling Downie to testify contrary to the direction of the EPA. The doctrine of sovereign immunity precludes the state court -- **and the federal court which gained limited jurisdiction upon removal** -- from exercising jurisdiction to compel Downie to testify contrary to EPA instructions, and also denies it the authority to review and set aside the EPA's decision and the federal regulations under which it is made. Significantly, the court in *Swett v. Schenk*, supra, noted that "the *Touhy* doctrine is jurisdictional" and the state court lacked jurisdiction to compel the investigators to testify, and the federal court itself similarly lacked such power **since it "acquired no jurisdiction on removal."** *Swett*, 792 F.2d at 1451-52.
>
> **The jurisdiction of a federal district court upon removal, pursuant to 28 U.S.C. § 1442, is essentially derivative of that of the state court, and the federal court acquires none upon removal.** *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17, 68 L. Ed. 2d 58, 101 S. Ct. 1657 (1981). The Supreme Court has instructed that "jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, **although in a like suit originally brought in a federal court it would have had jurisdiction.**" *Minnesota v. United States*, 305 U.S. 382, 389, 83 L. Ed. 235, 59 S. Ct. 292 (1939).

*Id.* at 70 [emphasis added].

The other cases cited by the F.B.I. are unavailing for the same reasons. *In re Elko County Grand Jury*, 109 F.3d 554 (9th Cir. 1997) was a removal case.

"Initially, we note that because this case was removed from state court pursuant to § 1442, our jurisdiction is derivative of the state court's jurisdiction." (*Id.* at 555.)

*Swett v. Schenk*, 792 F.2d 1447 (9th Cir. 1986) was also a removal case.

*F.B.I. v. Superior Court*, 507 F.Supp.2d 1082 (N.D. Cal. 2007) was also a removal case.

Here, this is *not* a removal case. As the specific direction of the F.B.I., and in response to the F.B.I.'s repeated proclamations that it is not bound by state court discovery orders, Colton *initiated* this action in federal court. Thus, this Court is *not* constrained by any limitations on the state court's jurisdiction, including sovereign immunity. Federal agencies do not enjoy sovereign immunity in federal court.

## V. THE MERITS OF THIS CONTROVERSY STRONGLY FAVOR THE CITY'S POSITION

Contrary to footnote 1 of the F.B.I.'s opposition brief, Colton *is* challenging the government's decision to withhold the subject discovery. Therefore, this Court should reach the merits of Colton's request for the discovery. The merits of the matter clearly favor Colton's position. Colton needs the discovery to prevent a convicted felon (who was prosecuted by the very same office which now, eight years later, opposes the discovery) from profiting by his crime. That simply cannot be allowed to occur.

Colton has been attempting to obtain discovery from the F.B.I. and its cross-deputized San Bernardino Sheriffs for nearly two year now. This process has been nothing short of a beaurocratic nightmare. Colton has received conflicting instructions from different agencies. The F.B.I.'s in-house counsel, Christina Gaspar said go get an order from an federal court, so Colton filed this action. Shortly thereafter, Assistant U.S. Attorney Jason said no, you shouldn't file an action in federal court, but offered no alternative process, other than getting

1  Singletary to agree to a privacy waiver, which he obviously is not going to do.

2  With every communication from the F.B.I., U.S. Attorney's office, or
3  Department of Justice, there are new procedural hoops to jump through.  Every
4  communication emphasizes form over substance.  In nearly every conversation,
5  someone is passing the buck from one person or agency to the next, or having to get
6  approval from some unnamed person higher up in the pecking order.  In hindsight,
7  it is clear that they never had any intention of providing any discovery, and that
8  they seem to be following a standard practice of declining to cooperate with all
9  discovery requests from private litigants.  That is precisely the sort of 'caprice' that
10 the Unites States Supreme Court and circuits have expressly rejected.

11 Colton has done exactly what the attorney from the F.B.I. instructed Colton
12 to do in order to obtain compliance with the subpoenas, including filing the present
13 Petition.  The F.B.I. should be estopped to now take the position that the Petition is
14 improper.

15 There is no substantive reason, nor has anyone from the federal government
16 ever offered any, why the requested discovery should be withheld.

17 If, as the F.B.I. claims, there is a material distinction between a state court
18 subpoena and a federal court subpoena, then Colton respectfully requests that this
19 matter be continued so that Colton can issue new subpoenas on the federal form
20 using the federal case number from this proceeding.

22 Dated:   April 11, 2011                          BEST BEST & KRIEGER LLP

                                                   By: _____
                                                   JOHN D. HIGGINBOTHAM
                                                   Attorneys for Petitioner
                                                   CITY OF COLTON

<u>DECLARATION OF JOHN D. HIGGINBOTHAM</u>

I, John D. Higginbotham, declare:

1. I am an attorney licensed to practice before all the State and Federal courts in the State of California, including the United States District Court for the Central District of California, and a partner in Best Best & Krieger LLP, City Attorney for the City Colton, and attorneys of record for the City of Colton in this action and the underlying state court action. I have personal knowledge of the facts set forth below.

2. I have been attempting to obtain crucial discovery from the F.B.I. and the San Bernardino County Sheriff Department since 2009. So far, they have given me absolutely nothing. Indeed, they have taken a complete stonewall approach.

3. I filed the current Petition in response to multiple written and verbal communications from various F.B.I., DOJ and U.S. Attorney personnel, in which they repeated indicated that they will not obey discovery orders from a state court, and that they only accept orders from a federal courts. For example, Christina Gaspar, in-house counsel in the downtown Los Angeles office of the F.B.I. indicated to me earlier this year that I would need to provide her an affidavit explaining what discovery I wanted and why, and also either obtain a privacy waiver from Singletary or an order from a federal court. Singletary's attorney has made it abundantly clear that he is not going to voluntarily give a privacy waiver. I provided the affidavit, and am now seeking a federal court order, just as Ms. Gaspar directed.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct. Executed on April 11, 2011, at Riverside, California.

John D. Higginbotham